**McALLEN STATE BANK, Appellant,**

**v.**

**TEXAS BANK AND TRUST COMPANY, Trustee, Appellee.**

**No. 17003.**

Court of Civil Appeals of Texas.

Dallas.

Dec. 29, 1967.

Rehearing Denied Feb. 2, 1968.

Wilson Herndon, of Strasburger, Price, Kelton, Miller, Martin & Unis, Dallas, D. F. Martinak and Ralph L. Alexander, of Kelley, Looney, McLean & Littleton, Edinburgh, for appellant.

Jay S. Fichtner, of Berman & Fichtner, Dallas, for appellee.

BATEMAN, Justice.

Each party to this appeal claims the proceeds of a policy of insurance on the life of R. B. Welch, Jr. The appellant claims that the policy was pledged to it as collateral security to Welch's indebtedness to it. Appellee is the trustee of an *inter vivos* trust of which Welch's wife and children are the beneficiaries. At the end

of a nonjury trial, the court awarded the money to appellee. We affirm.

*Facts*

The note held by appellant is dated September 24, 1963, in the principal sum of $10,000, executed by Welch and payable to appellant. In the lower left corner of the note, opposite the printed word "Collateral," appear the typewritten words "Renewal Note # 41035 (Financial Statement & Death Benefit Life Insurance)." This note had been given in renewal of Welch's prior indebtedness to the bank, and in connection with it, as well as the previous notes of the series, Welch agreed orally to furnish the bank a policy of insurance on his life as security. The details of the insurance were not agreed upon, except that it was to be a term policy. In each of the first two promissory notes there was a statement that the maker "pledged" as security therefor "Financial Statement and Death Benefit Life Insurance." There was a provision in the third and final note giving the bank or other holder the right "to sell at any time thereafter any collateral pledged as security hereto, etc."

In August, 1964 Welch applied for the policy, naming appellant as beneficiary, and instructed the agent to send it directly to appellant, which was done. In the policy, under the heading of "OWNERSHIP," the following appears:

"*Control of Policy*—You [Welch] are the owner of this policy unless someone else is designated by endorsement. All of the insured's rights belong to the owner.

"The owner may change the beneficiary at any time by filing an acceptable request. When we receive the request the change will take effect the date it was signed, subject to any action taken by us before receipt.

"*Assignment*—The owner may assign this policy. We will not be bound by an assignment unless duplicate signed forms are filed with us. The rights of the

owner and beneficiary shall then be subject to the rights of the assignee. We assume no responsibility for the validity of an assignment."

No express assignment of the policy was made. On January 18, 1965 Welch executed an indenture of trust to Republic National Bank of Dallas as trustee, whereby he placed in trust several policies upon his life, including the one above described. On September 3, 1965 Welch executed and sent to the insurance company a form changing the beneficiary of the policy in question from appellant to "Republic National Bank of Dallas, Texas Under Indenture of Trust Agreement Dated January 18, 1965," but appellant was not informed thereof. After filing this suit on the policy, Republic National Bank of Dallas resigned and appellee was substituted for it as trustee and as plaintiff. Appellant was made a defendant and it filed its answer claiming the proceeds of the policy as pledgee thereof. The insurance company paid the proceeds of the policy into the registry of the court and was dismissed, leaving only appellant and appellee as the contending parties.

Other facts found by the trial court, in addition to those recited above, were that the life insurance policy was not required for securing the credit on the note in question and that appellant paid no part of the premiums for the policy; that appellant did not rely on Welch's promise to provide the policy when it accepted his note and granted him credit; that appellant had knowledge of the contents of the policy including that portion providing that Welch was "the owner of this policy unless someone else is designated by endorsement. All of the insured's rights belong to the owner. The owner may change the beneficiary at any time by filing an acceptable request"; that appellant knowingly accepted the policy subject to and in subordination to the rights of Welch to change the beneficiary without notice to appellant; that appellant gave nothing in value for the policy and suffered no detriment to obtain same; that on September 9, 1965 the insurer acted

on Welch's application and changed the beneficiary as requested; that Welch died on September 13, 1965, at which time, and at all times since, the policy was and has been in the physical possession of appellant; that at the time of Welch's death the promissory note dated September 24, 1963 was past due and wholly unpaid.

The trial court's conclusions of law were consistent with the facts found and need not be related in detail here.

## Opinion

Appellant attacks the foregoing findings of fact and conclusions of law under seven points of error on appeal, all raising different aspects of what is conceded to be the ultimate issue of the appeal; viz., whether appellant's rights under the policy could be and were effectually destroyed by the unilateral change of the beneficiary by Mr. Welch. We overrule all of these points.

■ The basic fallacy of appellant's position lies in its assumption that its *possession* of the policy would make a change of beneficiary impossible without its consent and would entitle it to the proceeds regardless of the terms and provisions of the policy. The court found, upon sufficient evidence, that appellant knew of the contents of the policy, including the portion reserving to Welch the unqualified right to change the beneficiary from appellant to whomever he desired and was charged with knowledge that this could be done without disturbing its possession of the policy. If this was not satisfactory to appellant, or contrary to Welch's agreement, it could then have insisted upon an assignment of the policy, or the proceeds thereof, with a duplicate thereof filed with the insurance company, or a written waiver of Welch's retained right to change the beneficiary so long as his note remained unpaid. But it did neither of these things; it accepted the policy as tendered to it. Appellant does not charge that it was induced to do so by fraud or deception, nor that on equitable principles the policy should be reformed.

Indeed, it could not very well do so for there is nothing in the record to indicate that Welch ever agreed or intended to assign the policy or its proceeds, or to waive his right to change the beneficiary. We know of no authority directly in point, but find an interesting discussion of some of these principles in the somewhat similar case of Spiro State Bank v. Bankers' Nat. Life Ins. Co., 69 F.2d 185 (Cir.Ct., 8th Cir., Ark. 1934).

Both parties argue at length the question of whether the policy was actually *pledged* to appellant, as that term is known to the law; i.e., whether the essential elements of a pledge, as set forth in First Nat. Bank of Wichita Falls v. McCamey, 130 Tex. 148, 105 S.W.2d 879, 881(1937), existed. We need not be concerned with this argument for, assuming *arguendo* that the policy was pledged, appellant must be said to have taken it as it was written, including the unrestricted right of the insured to change the beneficiary without surrending the policy. The only vested right which appellant can be said to have acquired in the policy was to demand payment of the proceeds, to the extent of its claim against Welch, *provided it was still the beneficiary of the policy at the time of Welch's death.*

█ Appellant argues that Welch was estopped to change the beneficiary, and thus destroy its security for its loan, but we find nothing in the record to indicate that Welch did or said anything, or that anything was contained in the policy, to mislead appellant in any way or induce it to change its position, or that appellant knew less of the contents of the policy than Welch did. 22 Tex.Jur.2d, Estoppel, § 4, p. 664, and § 8, p. 669, where it is said, "The basis of estoppel is deception, and in its absence there can be no estoppel in pais." We find no evidence of deception in this record. Therefore, we hold that the doctrine of estoppel is inapplicable.

We think the judgment was correct and it is, therefore,

Affirmed.